^Hitchcock, C. J.
The questions presented for the consideration of this court are precisely the same as were presented to the Supreme Court in the county of Hamilton, and although in form the case comes before this court by writ of error, it is, in fact, rather in the nature of a rehearing.
The record, including the bill of exceptions, is very voluminous, and various points of law were made and ruled, in the progress of the trial, in the court of common pleas, to the ruling of the court, upon which exceptions were taken, and in which ruling *315 it is now insisted that the court of common pleas erred.- That court was requested by the counsel for the plaintiff in error, to give certain specific instructions to the jury, which were not given, and herein it is claimed there was error. It is further claimed that there was error in refusing a new trial. These several matters I propose to examine in the order in which they are presented by the record.
Before doing this, however, it may be proper to give a general view of the case, as presented by the bill of exceptions.
On April 18, 1846, a written contract or agreement was entered into between John Kuglcr, the plaintiff in error, of the one part, and Thomas J. Wiseman and Henry Borchelt, defendants in error, and John A. Wiseman, of the other part; John A. Wiseman signing as surety.
By the terms of this agreement, the party of the second part agreed, for the consideration of $5,300, to finish and complete three houses on East Front street, in Cincinnati, they furnishing the materials, of the dimensions and after the manner specified in the contract—to be completed on the 1st day of August then next following.
For this work Kugler agreed to pay $5,300; a part in advance; a part during the progress of the work; $1,325 six months after the buildings were finished; and a like sum of $1,325 in twelve months from the same time, with interest. Wiseman and Borchelt were to commence at and complete the building from the top of the cellar wall.
In pursuance of this contract, Thomas J. Wiseman and Borchelt *made preparations for and commenced the work. Quantities of lumber and other materials were prepared. At about the time they were prepared to put in, or were putting in the first tier of joists, Kugler, having sustained, or supposing he had sustained heavy losses in his business, and believing he should not be able to complete the buildings, put a stop to the work. This was probably the latter part of May, or some time in June. The exact time can not be ascertained from the testimony; but there is no controversy but that the work was suspended by his procurement. Ho visited New Orleans, and perhaps other places, and-ascertained that his losses had not been as great as he had apprehended. After his return to Cincinnati, he was anxious that the buildings should be completed, and applied to Thomas J. Wise- *316 man, or "Wiseman and Borchelt, to persuade them to go on with, the work. Wiseman objected, on the ground that the work was to have been done in the spring and early part of the summer, when labor and materials were of less value than in the latter part of the summer and fall. Kugler urged him to go on, assuring him that he should lose nothing, and that he would pay in proportion, or according to this increased value. Finally, Wiseman and Borchelt went on with the work, and finished it in January following. It does not appear that John A. Wiseman had ever any concern with the work, or that he was a party to this arrangement, pursuant to which the work was recommenced, after it had been suspended. How long the work was suspended does not appear; but it would seem but a small portion had been dono when the suspension took place. One witness, and I think he is the only one who speaks of the recommencement, says he supposes it was recommenced about the last of August, or 1st of September, one month after, by the terms of the contract, the entire work should have been completed. Such is the general aspect of the case, although, owing to the diversity of testimony, there may, perhaps, as to some matters stated, be some doubt.
On the trial of the case, the plaintiffs below first offered in evidenee to the jury the written contract before referred to. *To this testimony the counsel for Kugler objected, because that instrument was signed by John A. Wiseman, and he was not a party to the suit. This objection was overruled by the court, and the written instrument went to the jury. In this, it is said that the court of common pleas erred. We think otherwise. The .action was not based upon the contract. It was a claim set up, not by the two Wisemans and Borchelt, but by Thomas J. Wise-man and Borchelt, to recover compensation for work and labor which they had done and performed for Kugler, not strictly in pursuance of that contract, but in pursuance of an arrangement made, as they claimed, after they had been prevented, by the act of Kugler himself, from the performance of that contract, but which had reference to it, so far as the price to be paid was concerned. It was an item of evidence which might properly go to the jury. The legal effect would depend upon other testimony, which might subsequently be introduced. But if, as Kugler’s •counsel contends, the work was done under this original contract, .and John A. Wiseman was a party to that contract, and should *317 have been a party plaintiff, Kugler could not well have objected to the introduction, by the plaintiffs, of this contract, as the only effect would have been to prove themselves out of court.
In the further progress of the trial, the plaintiff’s counsel propounded the following interrogatory to a witness: “ State generally what is the difference in the prices of labor and materials in the spring and summer months, and the fall and winter months, particularly lumber and brick, and carpenters’ and brick-layers’ wages.” This question was objected to, because the question was confined to the year 1846—the year in which this4work was done. The court, however, overruled the objection, and permitted the question to be propounded and answered-. Now if the object was to ascertain the difference in this particular year, we do not see that there could be any substantial objection to the interrogatory, as propounded. Inquiry might be made as to the difference of prices ^generally, and then ascertain whether the difference in this particular year varied from other years.
Another witness was inquired of by the then plaintiff’s counsel to “ state the difference, in the way of per centum, between the price of materials and labor in the early and latter part of the year 1846.” To this question the counsel for defendant below objected, because the question was incompetent, as not showing the actual increased expense of the price of materials and labor to the plaintiffs, but the court overruled the objection, and permitted the question to be propounded and answered.
Whether the decision upon this question was proper, must depend upon the peculiar circumstances of the case, and the previous testimony in the case. The previous evidence conduced to prove that the original contract had been ended by the act of the defendant below. He had prevented the other parties to the contract from complying with that contract. Ho had caused them to suspend the work, after but comparatively little had been done, until long after the entire job should have been completed. Subsequently he persuaded them to resume the work under an engagement to pay them, in addition to the contract price, either the enhanced price of labor and materials in the latter part of the year, or what should actually be the increased cost to the builders in consequence of such enhanced price. What the contract was,, in this particular, the jury must determine from the evidence. The evidence not being perhaps explicit, it was proper that this *318 question should be propounded and answered; and if the jury should be satisfied that the contract was for the enhanced price, as contended for by the plaintiffs below, then they would have the evidence before them from which to ascertain the amount.
Among others, the plaintiffs below offered, as a witness, John A. Wiseman, and he was objected to as incompetent, on the ground that he had signed the original contract, which had been given in evidence, and therefore was interested in the event of the suit. This objection was overruled, and he was *examined. This decision of the court was excepted to, and it is claimed to have been erroneous:
If John A. Wiseman could gain or lose by the event of the suit, then he should have been excluded. But it is impossible for this court to see how he could have gained anything, or could be subject to any loss. Counsel say that a verdict against the defendant below might, by possibility, prevent him from the recovery of any damage upon the original contract, in consequence of the work not having been well done. Even admitting this, which we do not, it does not constitute that direct and certain interest which is necessary to exclude a witness.
But the testimony introduced before this witness was offered, conduced to show that the performance of this contract had been prevented by the act of the defendant below, by which John A. Wiseman was discharged from any obligation imposed upon him by”that contract. And it conduced to show further, that much the largest portion of the work was done in pursuance of a new arrangement, entered into between Kugler and Thomas J. Wiseman, and Borchelt, after the time when, according to the original contract, the whole work should have been completed. To’this latter arrangement John A. Wiseman was not a party, nor had he in it any interest. We think he was a competent witness.
In the further course of the trial, and in making his defense, the then defendant brought forward a book, and proved by a witness that it was his (the defendant’s) book of accounts—in which was an account against the plaintiffs below. The witness further testified, that on one occasion, toward the close of the work, Wiseman was in the office, and had his memorandum-book with him; that Wiseman and Kugler were looking over the book of accounts and the memorandum-book, and that there appeared to be no difference between them. At this time the witness was engaged about *319 his own business, in posting books. Having offered this testimony, the book itself was offered in evidence. It was objected to by plaintiffs’ ^counsel, and the objection sustained. In this, it is claimed, that the court erred.
We are not prepared to say that there was any error in this decision of the court. I suppose it was intended to infer from the circumstances, that the correctness of the account was admitted. Those circumstances were not sufficient to justify such inference. The defendant in error, under the statute, might have sustained his account by his own oath. This, for some cause, he did not do, and not having done it, I think the court very properly sustained the objection to receiving the book in evidence.
After the evidence in the case was closed and the arguments of counsel, the defendant below, now plaintiff in error, requested the court to instruct the jury, “that if they believed the original contract was only altered, so far as to pay for extra price of materials and labor done, between the price of such materials and labor in the time mentioned in said contract, and what such materials would be worth at the time the work was actually done, then all the plaintiffs can recover in this suit is the amount of such difference in the costs of labor and materials, and they can not recover the original contract price.”
In response to this, the court instructed the jury “ that if that was the only alteration the plaintiffs were not entitled to recover at all, because John A. Wiseman, under that view- of the case, would have a right to recover, and he was not a party.”
In this it is claimed there is error. I am not fully satisfied myself with the charge, but how the plaintiff in error can complain, is not so readily seen. His request was, that in a certain hypothetical state of case, the plaintiff below could recover only to a certain extent. The court replied that in such state of case, the plaintiffs could not recover anything. Admitting the court to be wrong, no injury was done to the plaintiff in error, unless it would have been better for him to have a verdict against him to a limited amount, than a verdict in his favor. For an error committed by an inferior court, the-^superior court will not reverse a judgment, unless that error was calculated to do an injury to the party seeking the reversal.
The plaintiff in error, by his counsel, further requested the court to instruct the jury “ that if they believed the defendant *320 agreed to pay, in addition to the contract price, such additional price for materials and labor, as the cost of such materials and labor would amount to, more than the same materials and labor would have cost, if the buildings had been erected in May, June or July, according to the terms of the original contract, it is incumbent on the part of the plaintiffs to prove the amount, which the additional cost and labor amounted to, and they can only obtain such additional costs of materials and labor, in addition to the original contract.”
This instruction the court refused, but instructed as before, with the addition, “ that if a subsequent parol contract was made, by which the parties accepted the original contract to regulate the price, they must look to the evidence to see the difference between the old and new contract, that the plaintiffs would be entitled to the market value of labor and materials, according to the course of trade.”
As before, the court instructed, that in the hypothetical case supposed, there could be no recovery, but added, in substance, that if there was a subsequent parol contract, as claimed by plaintiffs below, the plaintiffs were entitled to the market value of labor and materials, without positive proof of the actual increased cost to them.
In this we think there was no error.
Again, the plaintiff in error requested the court to instruct the jury, “ that the plaintiffs can not recover in this case, the items of $1,325, due in six months, and $1,325, duo in twelve months after the buildings were completed, because the time for such payments had not arrived when this suit was brought.”
The court refused to give this instruction, as charged, but told the jury if the original contract was abandoned, they must look to the subsequent contract; and if by that there was *to be paid the $5,300, and also the additional price in the materials and wages, the plaintiffs were entitled to the fair market value in the rise of materials and labor, no matter what the same might have cost the plaintiffs.”
Did the court err in refusing this instruction as asked ? By the terms of the original contract, a credit was to be given, and the great struggle through the whole case seems to have been—on the one side, to make out that the work was done upon this contract, with some little addition of payment to be made for the rise of *321 materials and labor, in consequence of the work having been delayed by the plaintiff in error; and on the other side, to establish •the fact that a subsequent contract was made, by which the old one was abandoned, with the exception of the price therein fixed to be paid for the erection of the buildings. That the original contract was not complied with, was not the fault of the builders, but of the owner of the property. In consequence of his supposed embarrassments, he stopped the work, and would not permit the builders to complete it according to contract, and he kept it suspended until the time had elapsed within which the work should have been done. Undoubtedly, by this conduct, the other contracting party was released from all'obligation under this contract. Not only so, but by his own conduct, the plaintiff in error had rendered himself liable to the other contracting party for a breach of the contract. That contract was put an end to.
At a subsequent period, and after the time when the buildings should have been completed, Kugler applied to the builders, requesting them to go on with the work. The evidence recited in the bill of exceptions, shows that they refused to do it, assigning for cause of refusal that materials and labor were more expensive in the latter part of the year, than at the time, when, by the terms of the original contract, the work should have been done, they would have been. In other words, that building was more expensive in the latter part of the year than in the early. The proposition was then made by Kugler, to pay this increased expense. At least such is the claim, and the *proof seems to warrant it. It does not appear that in this new arrangement anything was said about the time of payment. Whether there was such a new contract was for the jury to determine, and they have found that there was. At least they must have found this, in order to have found for the plaintiff. Besides, had the suit been brought upon the original contract, even had John A. Wiseman been a party plaintiff, there could have been no recovery, for the work was not done in accordance with the contract. By that contract it should have been done' by the 1st of August—it was not done until the January following. In some of the instruction requested, the counsel for plaintiff in error seem to suppose that, although the defendants in error might have recovered for the labor performed and materials furnished after the work was recommenced, yet they could not recover for the labor *322 and materials furnished before -the work was suspended, because John A. Wiseman is not a party. How it is impossible not to understand the relation of these parties. True, John A. Wiseman signed the contract; but he signed as security that Thomas JWiseman and Borclielt would do the work and furnish the materials. It could not have been expected that he was to do one or the other. If they failed, he then would be liable. In no court could he gain anything. The only interest he had in the matter was to see that they performed the contract. Such is the commonsense construction of the whole matter. And under such circumstances, it seems to me that in an action like the present, they would be entitled to recover, as well for the work and labor performed, and materials furnished, before as after the suspension of the work.
If there was such a new contract as claimed by the plaintiffs, below, and in it nothing said as to the time of payment, then the court might well withhold the instruction last referred to.
Again, the court was requested to instruct the jury, “that if there is no evidence of any new contract, except as to the additional cost of the work and materials, the written contract must govern the parties as to the time of payment, without *regard to the question whether the defendant has paid money faster than the same was due. That the mere fact that Kugler has paid money faster than the contract called for, at plaintiff’s request, will not affect the matter, as to the times of jiayment mentioned in the contract.”
This charge the court refused to give, but instructed the jury in the hypothetical case stated, the plaintiffs could not recover at all.
If there was error in this, it certainly was not an error of which the plaintiff in error can complain. It was not an error by which he could be injured.
The next instruction requested was, “that the jury can not allow anything for extra wages-for work done, or costs of materials, by a per centage on the whole amount of the contract-price ; but must confine themselves to the actual advance prices paid for materials and labor furnished and performed; and that for all such items of materials and labor done and furnished at the same prices they would have been charged, if done or furnished *323 in the time mentioned in the original contract, they are not entitled to additional credits.”
This charge was requested upon the assumed hypothesis that the original contract was still in force; that the work was done under it, and that there was no new contract except as to the increased value of labor and materials. The court had repeatedly told the jury that if such was the state of case, the plaintiffs could not recover at all. As to the instruction requested as last stated, the court refused to give it as requested, but charged the jury “that the difference might be estimated by a per centage, and they might ascertain the customary prices of labor and materials in the spring and fall, and allow the fair average difference, no matter what it cost the plaintiffs, whether more or less than the average.” This is complained of as error.
If the contract, in pursuance of which this work was done and the material furnished, was as claimed by the plaintiffs below; that is, if, when the work was resumed, the defendant below agreed to pay the original contract price, and in ^addition thereto, the increased price of labor and materials, in consequence of the advanced prices, then the increased price might be ascertained by ascertaining the per centage advanced, or in any other feasible manner. Such seems to have been the opinion of the court of common pleas, and we think it was correct in principle.
Other instructions were requested, which were given. Those above referred to, are all in which it is complained that any error intervened.
The last error alleged is, that the court of common pleas did not grant a new trial. (1)
We have carefully examined the whole record, voluminous as it is, and from that examination, are satisfied that the verdict of the jury was in accordance with the evidence, and no new trial should have been granted.
The judgment of the Supreme Court is affirmed.

 As to new trials, see note to Swan’s" Pwevised Statutes, 614, 496; 5 Ohio, 544; also Wilcox Dig. Exceptions must be taken to any ruling of the court at the time it is made, or such ruling can no't be assigned for error. Geauga Iron Co. v. Street, 19 Ohio, 300. The overruling of a motion for new trialbeeause the finding of the court or jury was against evidence, can not be re, versed on error unless the bill of exceptions discloses all the evidence. Wagers v. Dickey, 11 Ohio, 439, Hicks v. Person, 19 Ohio, 426.